**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2199-24

G & I PROPERTIES, LLC and
GEORGE & I, INC.,

     Plaintiffs-Appellants,

v.

BOROUGH OF WILDWOOD
CREST PLANNING BOARD and
MAHALO WILDWOOD CREST,
LLC,

     Defendants-Respondents.

_____

Argued May 6, 2026 – Decided July 6, 2026

Before Judges Gummer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0175-24.

Nicholas F. Talvacchia argued the cause for appellants (Cooper Levenson, PA, attorneys; Nicholas F. Talvacchia and Jennifer B. Barr, on the briefs).

William J. Kaufmann argued the cause for respondent Borough of Wildwood Crest Planning Board (Nehmad

Davis & Goldstein, PC, attorneys; William J. Kaufmann, on the brief).

Frank L. Corrado argued the cause for respondent Mahalo Wildwood Crest, LLC (Barry Corrado & Grassi, PC, attorneys; Frank L. Corrado, on the brief).

PER CURIAM

Plaintiffs G & I Properties, LLC and George & I, Inc.[1] appeal from a February 13, 2025 Law Division order dismissing their complaint in lieu of prerogative writs. Plaintiffs had challenged the decision of defendant Borough of Wildwood Crest Planning Board (Board) to consider and grant the application of defendant Mahalo Wildwood Crest, LLC (Mahalo) for preliminary and final major site plan approval and variance relief under N.J.S.A. 40:55D-70(c)(2). We affirm substantially for the reasons explained in the written decision of Judge Michael J. Blee accompanying the order.

---

[1] In the Law Division, plaintiffs' complaint was consolidated with a similar matter brought by Viper Corporation, Forever Summer, Inc., BAF Corp., J.C. Crest, Inc., Bernard Bolinski, Gary and Marian Male, Joanna Lacavita, Steven Ewankov, Grace Deroberts, Vanessa Panek, Kenneth Stefanide, Alethea Pawlowski and Claudio and Claudia Garcia. These plaintiffs are not participating in the appeal.

I.

Mahalo is the owner of property located on Ocean Avenue, in Wildwood Crest, New Jersey. In September 2022, Mahalo filed an application seeking preliminary and final major site plan approval and variance relief under N.J.S.A. 40:55D-70(c)(2) (2022 Application). "In order to reconstruct and expand an existing five-story hotel to contain a total of 66 individual units, and to reconstruct an existing lobby and second-floor pool/patio area," the 2022 Application included:

> [M]inimum hotel unit size . . . , minimum front yard setback - Rosemary Road (30[ feet] is required whereas 11[ feet] is proposed), minimum front yard setback - Beach Avenue (20[ feet] is required whereas 0[ feet] is existing and proposed), minimum front yard setback - Ocean Avenue (20[ feet] is required whereas 0[ feet] is proposed), minimum rear yard setback . . . , maximum building coverage . . . , maximum lot coverage . . . , minimum off-street parking (79.2 off-street parking spaces are required whereas 70 are proposed), minimum parking stall dimensions (9[ feet] x 18[ feet] is required whereas 7.5[ feet] x 16[ feet] arc proposed), to permit tandem parking, to permit back-out parking within the public right-of-way, to forgo installing a landscape buffer in off-street parking areas, to not provide a loading zone, minimum drive aisle width (20[ feet] is required whereas 16.l[ feet] and 18.5[ feet] are proposed), to permit a swimming pool in a front yard, minimum pool deck setback . . . , maximum number of signs . . . , maximum sign area . . . , maximum total sign area . . . , and minimum raised curb . . . .

3

A-2199-24

After hearing the 2022 Application, the Board adopted a resolution that provided: (1) "a majority of the Board took no issue with the proposed 11[ foot] setback along Rosemary Road" because "the proposed setback was adequate, and preserved a sufficient view corridor"; "the Master Plan calls for flexibility in relation to the renovation of existing motels"; and "horizontal expansion would [not] impair the intent or purpose of the zone plan"; (2) members had "expressed concerns in relation to the proposal . . . which resulted in a 0 f[oot] setback along Ocean Avenue"; and (3) members "unanimously agreed that the proposed off-street parking arrangement was problematic" because "the undersized drive aisles and parking spaces presented significant safety concerns and were not functional," "the requirement that vehicles back out of the parking area presented safety concerns to vehicle operators and the general public," and "the proposed parking arrangement presented substantial detriments to public good."

Thus, "[t]he Board found that the approval of the application would not be in the best interests of the Borough and that [Mahalo]'s proposal, specifically in relation to off-street parking, would impair the intent and purpose of the Zoning Ordinance and Zone Plan." Further, the Board "found that granting the variance relief requested . . . would not advance the purposes of zoning . . . and

4                                                                      A-2199-24

that the benefits of deviating from the zoning requirements were substantially outweighed by the detriments."

In August 2023, Mahalo filed a new application seeking preliminary and final major site plan approval and variance relief under N.J.S.A. 40:55D-70(c)(2) (2023 Application). "In order to reconstruct and expand an existing five-story hotel to contain a total of 64 individual units, and to reconstruct an existing lobby and second-floor pool/patio area," the 2023 Application included:

> [M]inimum front yard setback - Rosemary Road (30[ feet], is required whereas 11[ feet] is proposed), minimum front yard setback - Beach Avenue (20[ feet] is required whereas 0[ feet] is existing and proposed), minimum front yard setback - Ocean Avenue (20[ feet] is required whereas 5[ feet] is proposed), maximum lot coverage . . . , minimum contiguous raised curb . . . , minimum pool deck setback . . . , minimum rear yard setback . . . , to permit a swimming pool in a front yard, to not provide a loading zone, minimum off-street parking spaces (77 off-street parking spaces are required whereas 64 are proposed), minimum parking space dimensions (9[ feet] x 18[ feet] is required whereas 8[ feet] x 17.25[ feet] are proposed), to forgo installing a landscape buffer in off-street parking areas, minimum drive aisle width (20[ feet] is required whereas 15.75[ feet] is proposed), maximum number of curb cuts . . . , maximum number of signs . . . , maximum total sign area . . . , and to not provide a screened trash/recycling area.

5

Regarding its overall parking plan, Mahalo's application included Plan A, which provided for sixty-six spaces, and Plan B, which provided for sixty-four spaces, with each plan requiring different variance relief.

The Board considered plaintiff's argument that Mahalo's new application was barred under the doctrine of res judicata.  As part of that consideration, the Board "determined that the modifications made by [Mahalo] were incorporated to address concerns previously raised by the Board" because of the denial of the 2022 Application and "the overall reduction of the number of hotel rooms, the change in the parking plan and circulation, and the increased [Ocean[2]] Avenue setback were substantial and warranted treating this as a new application." Therefore, "the Board determined that the application was not barred by the doctrine of res judicata."

Regarding the merits of the application, according to the Board's resolution, the Board heard testimony from engineer Will Hanson, P.E., who reviewed the Borough engineer's report with the Board.  Further, on behalf of Mahalo, the Board heard testimony from Frank Corrado, Mahalo's attorney, and Mahalo's principal, Eustace Mita; architect Steven J. Tomasetti, R.A., accepted

---

[2]  In its brief, the Board states the 2023 Resolution included a typographical error misstating Beach Avenue instead of Ocean Avenue.

by the Board as an expert in the field of architecture; and engineer Vincent Orlando, P.E., P.P., L.L.A., C.M.E., accepted by the Board as an expert in the fields of engineering and land use planning.

Regarding signage, the resolution states that Tomasetti testified the application included "façade signs along Ocean Avenue and Rosemary Road" and "a third sign . . . proposed along Rosemary Road for wayfinding purposes." Further, Tomasetti explained "[a]ll three . . . signs are proposed to be backlit with a matte finished tile on the wall to prevent glare/reflection." The resolution details that Orlando "opined that several of the purposes of zoning, outlined within N.J.S.A. 40:55D-2, are advanced in connection with th[e 2023 A]pplication and support granting the sign variance," including N.J.S.A. 40:55D-2(h) and (i). Further, the resolution notes Orlando "opined that the sign variances can be granted as there are no substantial detriments to the public good and the application does not impair the intent and/or purpose of the zone plan or zoning ordinance."

The resolution recites that Orlando testified as to the alternative parking plans. He "indicated that the proposed parking arrangement is consistent with parking provided by neighboring hotels." Regarding the parking variances, "Orlando opined that several of the purposes of zoning, outlined within N.J.S.A.

7

40:55D-2, are advanced in connection with th[e 2023 A]pplication and support granting the parking variance relief," including N.J.S.A. 40:55D-2(a), (g), and (i). Further, the parking plan "results in a safer environment for pedestrians and motorists through the elimination of back-out parking spaces and the creation of more off-street parking and larger, albeit undersized, parking spaces."

In addition, Orlando reviewed the requested setbacks. "Orlando opined that several of the purposes of zoning, outlined within N.J.S.A. 40:55D-2, are advanced in connection with th[e 2023 A]pplication and support granting the setback variance relief" including N.J.S.A. 40:55D-2(a), (g), and (i). In addition, Orlando testified the application "is consistent with the Borough's Master Plan" regarding the "need to preserve and maintain existing hotels/motels." The Board's resolution notes "[t]he 2012 Master Plan recognized that the loss of hotels/motels within the Borough was detrimental to the Borough's future and its tourist economy." Further, Orlando indicated the "property is an appropriate location for the hotel use" because it "is permitted in the . . . zone, and the subject property has been developed with a hotel for decades." Orlando "opined that the setback variances can be granted as there are no substantial detriments to the public good and the application does not impair the intent/purpose of the zone plan or zoning ordinance."

A-2199-24

The Board's resolution states that George Pawlowski, Jr. and Paul Pawlowski, owners of the Compass Family Resort (Compass), appeared at the hearing and objected on Compass's behalf. George testified the approval of the 2023 Application would "negatively impact his business and set a dangerous precedent for future hotel/motel development within the Borough." Paul "echoed" George's testimony and stated the 2023 Application was "contrary to the Borough's Master Plan and the parking proposals will create dangerous conditions for pedestrians and other motorists."

Talvacchia argued the 2023 Application "amounts to a substantial overdevelopment of the property to the detriment of the public and neighboring property owners." Talvacchia cross-examined Tomasetti and Orlando.

In addition, Peter Steck, P.P., qualified as an expert in land use planning, appeared at the hearing on behalf of Compass. According to Steck, because Compass lacked an outdoor area on its property, the loss of the beach view would negatively impact Compass's operations. Although the Borough's Master Plan permits "vertical expansion of existing hotels," Steck testified horizontal expansion of the hotel presented a substantial detriment to the public good, the zoning plan, and the zoning ordinance due to the loss of the ocean view. Steck opined the detriments associated with the 2023 Application substantially

A-2199-24

outweighed any benefits. Further, Steck opined the Plan B parking scheme was "substandard, and d[id] not address the needs of the proposed hotel." Steck opined the 2023 Application "amounts to an overdevelopment of the subject property."

In addition, David Shropshire, P.E., P.P., appeared at the hearing on behalf of Compass and was accepted by the Board "as an expert in the field of engineering, specifically traffic engineering." Shropshire testified that proposed parking plans did not comply "with generally accepted traffic engineering standards" and were "inconsistent with the Borough's Ordinance." Further, Shropshire opined the "proposed parking plans are detrimental to the Borough and the surrounding neighborhood."

Fourteen members of the public addressed the Board. Two of the members expressed support for the 2023 Application, although one "expressed significant concerns regarding the proposed parking" plans and twelve "expressed significant concerns and objections to the" 2023 Application.

The Board's resolution describes its deliberations as follows:

> 175. . . . [A] majority of the Board took no issue with the proposed 11[ foot] setback along Rosemary Road. The Board indicated that the proposed setback was adequate and preserved a sufficient view corridor. Moreover, the Board acknowledged that there are hardly any existing hotels/motels within the Borough

that comply with the 30[ foot] view corridor setback requirement.

176. The Board agreed that the Master Plan calls for flexibility in relation to the renovation of existing motels in order to maintain and preserve same, and they disagreed that horizontal expansion would impair the intent or purpose of the zone plan in light of the goals and objectives identified to maintain and preserve existing hotels.

177. The Board agreed that increasing the Ocean Avenue building addition setback from 0[ feet] to 5[ feet], consistent with the facade of the existing structure was an improvement and resolved a prior concern raised by the Board [regarding the 2022 Application].

178. The Board engaged in an additional discussion regarding the proposed parking arrangement. A majority of the Board acknowledged that proposed parking plan B, while not perfect, is an improvement over what was presented back in [the 2022 Application], and resolved the majority of the Board[']s concerns in relation to one-way back-out drive aisles and back-out parking spaces.

179. Two (2) Board Members indicated that the parking arrangement is not functional, and the site and parking issue could be improved through the elimination of hotel rooms.

180. These Board Members indicated that . . . [Mahalo]'s proposal has improved, but the modified proposal amounted to an overdevelopment of the site to the detriment of the Borough and neighboring property owners.

A-2199-24

181. A majority of the Board agreed that the modifications to the proposal that were made by . . . [Mahalo] following the denial of the [2022 A]pplication . . . , significantly improved the overall project and addressed their prior concerns.

182. These Board Members recognized that nearly all adjacent hotels, and hotels throughout the Borough for that matter, contain parking spaces which are similar in size and consistent with . . . [Mahalo]'s proposal.

183. The majority of Board Members agreed that a parking ratio of one . . . space to one . . . hotel room was appropriate for the site and presented no detriments to the public good, nor would it impair the intent or purpose of the zone plan and/or zoning ordinance.

184. The majority agreed that preserving an existing hotel within the Borough is consistent with the Master Plan and is vital to sustaining the Borough's tourism industry.

The Board's resolution concludes:

185. A majority of the Board found that the approval of the [2023 A]pplication, . . . would be in the best interests of the Borough as [Mahalo] established that various purposes of zoning would be advanced in connection with this Application.

186. The Board further found that the . . . [2023] Application would not impair the intent or purpose of the [Borough]'s zoning ordinance or zone plan and there are no substantial detriments to the public good or the surrounding community.

A-2199-24

Plaintiffs filed a complaint in lieu of prerogative writs. In the two-count complaint, plaintiffs alleged the doctrine of res judicata prohibited the Board from considering the 2023 Application because it was substantially similar to the denied 2022 Application and the Board's approval of the 2023 Application violated the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171, and was "otherwise arbitrary, capricious, and unreasonable."

In the written decision, the judge reviewed the Board's resolution and the Board members' deliberations during the hearing. The judge found "Mahalo presented to the Board a change in the proposed parking plan and new setback off Ocean Avenue." The judge found "[t]he record is clear that the Board thoughtfully considered the sufficient changes in the [2023 A]pplication and the vote to hear the [2023 A]pplication was unanimous." Concerning the Board's decision to consider the 2023 Application, the judge applied the arbitrary, capricious, or unreasonable standard and stated "[t]here need not be [a] significant change." The judge concluded "the Board did not act arbitrarily" and "agree[d] with the Board that res judicata did not bar hearing the 2023 Application."

Regarding the 2023 Application, the judge noted "Mahalo requested [N.J.S.A. 40:55D-70](c)(2) variance relief relating to certain setbacks, parking,

13

and signage." Concerning the positive criteria of the application, the judge noted Orlando's testimony "that the requested variances advance three . . . purposes of zoning under the" MLUL, specifically N.J.S.A. 40:55D-2(a), (g), and (i). The judge recognized "[t]he Board accepted the expert opinion on these purposes and . . . Orlando's testimony that the [2023] Application promotes a more desirable environment." In addition, the judge stated "the Board agreed that the Master Plan calls for flexibility in relation to the renovation of existing motels in order to 'maintain and preserve the same.'" Further, while "[a] major concern with the [2023] Application is that it encroaches upon the view corridor and blocks the surrounding neighbors' beach view . . . the majority of the Board took no issue with the proposed eleven . . . foot setback along Rosemary Road because it preserved a sufficient view corridor."

The judge also noted "[t]he Board . . . considered extensive testimony on the parking variances." The judge "agree[d] with the Board's decision to accept . . . Orlando's testimony on how the parking plans advance the purposes of zoning." The judge stated, "Orlando described how the proposed parking plans provide better circulation than what is currently at the [p]roperty" and "both parking plans include a minimum of a one . . . to one . . . unit to space ratio" "due to Mahalo cutting down the number of units from 66 to 64." The judge

14

stated "Orlando . . . note[d] how most of the motels similar to the [p]roperty have less than a one . . . to [one] ratio and thus the parking plans would advance the purposes of the MLUL pursuant to N.J.S.A. 40:55D-2(g) and (i)." The judge noted Orlando's acknowledgement of "slight deviations . . . when developing with limited space" but also his "praise[ for] the creativity and broader picture of Mahalo's plan to establish a 'first-class' hotel that enhances that area of the community."

Regarding signage, the judge stated "Orlando described clearly how proportional the sign is with the building façade and its tile background to help eliminate glare." Moreover, the judge stated "the building [would be] identifiable in all directions, which helps eliminate traffic concerns."

Therefore, regarding the positive criteria, the judge found "[t]he Board accepted . . . Orlando's testimony as detailed in the Resolution." The judge did "not doubt the credibility of [p]laintiffs' experts [or] their opinion on the [2023] Application." The judge acknowledged "planning boards have significant discretion in their decision to grant variance relief due to their understanding of the local conditions." The judge found "[t]he testimony . . . demonstrate[d] sound reasoning for why the requested variances satisfy the positive criteria." Moreover, the judge found "[t]he Board carefully weighed this testimony and

ultimately voted to grant such relief." Under these circumstances, "the [judge] f[ound] the Board did not act arbitrarily, capriciously, or unreasonably in determining the requested variances in the [2023] Application met the positive criteria."

The judge noted Orlando also testified regarding the negative criteria. Regarding setbacks, the judge stated Orlando testified "[t]he variance relief . . . is consistent with the type of development that has occurred in the community." Moreover, the judge stated Orlando testified "there [wa]s no substantial . . . [detriment] to the public good" and, in fact, he testified "[the] hotel w[ould] have a positive impact on all other hotels in the community." (Second and third alteration in original).

Regarding the parking variances, the judge noted Orlando's testimony that "the general neighborhood is enhanced here by eliminating back[-]out spaces onto Rosemary [Road]. That creates a better safety issue. It creates a better walkable community. It creates a safer environment for people who are walking down Rosemary [Road]." Indeed, the judge noted Orlando testified, "both parking plans give a better alternative to what was there and was previously approved."

Further, concerning signage, the judge noted Orlando's testimony that "the signs are well proportion[ed] with the building façade and will not have any impact on any neighborhoods." (Alteration in original). In addition, the judge stated Orlando testified the signage was "not creating any offsite clear light or any infringement to the adjacent properties."

The judge "agree[d] with the Board that this testimony effectively demonstrate[d] the [2023] Application . . . satisfie[d] the negative criteria." The judge concluded "Orlando provided sound reasoning for why each category of variance relief would not result in substantial detriment to the public good or substantially impair the purpose of the zone plan."

Lastly, the judge considered plaintiffs' challenge to the Board's approval of Mahalo's site plan application. The judge noted the parties' reliance on Lionel's Appliance Center, Inc. v. Citta, 156 N.J. Super. 257, 268-69 (Law Div. 1978), for the proposition that "a board may deny a site plan application only if the ingress and egress proposed [in] the plan creates an unsafe and inefficient vehicular circulation." The judge found "[t]he Board properly accepted all expert testimony presented, including . . . Shropshire and . . . Orlando." However, the judge noted "[t]he Board did not find Shropshire's testimony reflected a concern with the plan as it relates to the safety of ingress and egress

to Rosemary Road."  Instead, "Shropshire's primary concern was that the parking plans did not meet generally accepted traffic standards."  The judge found the "evidence does not suggest the [2023] Application fails to conform to the site plan ordinance."  Moreover, because "the Board gave sound reasoning after accepting and reflecting [on] all expert testimony, it did not err by approving the site plan."

On appeal, plaintiffs argue the 2023 Application "is virtually identical to" the 2022 Application and therefore the Board was barred from considering it under the doctrine of res judicata.  Further, plaintiffs contend "[b]y granting so many variances, the Board, . . . rezoned the [p]roperty, . . . at the expense of the [Borough's] planning goals."  Plaintiffs assert a N.J.S.A. 40:55D-70(c)(2) "variance may not be granted when the variance benefits only the developer at the expense of the municipal planning goals."  Further, plaintiffs argue Mahalo failed to satisfy the positive and negative criteria for variance relief, and failed to demonstrate that setback and parking variances would not result in a substantial detriment to the public good, or cause substantial impairment to the intent and the purpose of the Borough's zone plan and zoning ordinance.  Plaintiffs note "courts have concluded that planning boards may properly deny site plan applications due to safety conditions of ingress and egress," (citing

Lionel's, 156 N.J. Super. at 268-69). Lastly, plaintiffs argue Shropshire provided "unrebutted testimony" "that the proposed parking plan fails to meet generally accepted engineering design standards" and, therefore, "the record cannot support the Board's approval of [the] site plan with substandard parking as it relates to traffic circulation."

II.

"Res judicata as a principle of law bars a party from relitigating a second time what was previously fairly litigated and determined finally." City of Hackensack v. Winner, 162 N.J. Super. 1, 27 (App. Div. 1978). "The application of res judicata is a question of law. . . ." Walker v. Choudhary, 425 N.J. Super. 135, 151 (App. Div. 2012) (omission in original) (quoting Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000)). We review questions of law de novo. Ibid. (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

For res judicata to apply, there must be "a final judgment by a court or tribunal of competent jurisdiction, identity of issues, parties and cause of action and thing sued for." Winner, 162 N.J. Super. at 27-28. "As a general rule, an adjudicative decision of an administrative agency 'should be accorded the same finality that is accorded the judgment of a court.'" Bressman v. Gash, 131 N.J.

19

517, 526 (1993) (quoting Restatement (Second) of Judgments § 83 cmt. b (A. L. I. 1982)).

Therefore,

> [i]f an applicant files an application similar or substantially similar to a prior application, the application involves the same parties or parties in privity with them, there are no substantial changes in the current application or conditions affecting the property from the prior application, there was a prior adjudication on the merits of the application, and both applications seek the same relief, the later application may be barred.
>
> [Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 39 (2013).]

A board makes the initial determination regarding "the sufficiency of a change." Bressman, 131 N.J. at 527. The question of whether there is a "sufficient change in the application itself or in the conditions surrounding the property," should be "liberally construed in favor of the applicant." Russell v. Bd. of Adjustment of Tenafly, 31 N.J. 58, 66 (1959). "Even if the [subsequent] application is closely similar to a previous one, . . . it is within the discretion of the board whether to reject the application on the ground of [r]es judicata." Mazza v. Bd. of Adjustment of Linden, 83 N.J. Super. 494, 496 (App. Div. 1964).

A board's "determination . . . should 'be overturned on review only if it is shown to be unreasonable, arbitrary or capricious.'" Bressman, 131 N.J. at 527 (quoting Russell, 31 N.J. at 67). "[T]he question is not whether a reviewing court would have reached a different conclusion if it had decided the matter." Ibid. (citing Kaufmann v. Planning Bd. for Warren Twp., 110 N.J. 551, 558 (1988)). Nor do we "substitute [our] own judgment for that of the" board. Advance at Branchburg II, LLC v. Branchburg Twp. Bd. of Adjustment, 433 N.J. Super. 247, 253 (App. Div. 2013) (alteration in original) (quoting Kenwood Assocs. v. Bd. of Adjustment of Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)).

In Russell, the New Jersey Supreme Court found "the board did not abuse its discretion in considering the second application on its merits" when the second application "provide[d] for an increase of five feet in the proposed setback which . . . amount[ed] to a 20% [i]ncrease. Also[,] the total area to be occupied by the dwelling ha[d] been decreased from 18% [t]o 12%." 31 N.J. at 67.

"N.J.S.A. 40:55D-70(c)(2) permits a variance for a specific property, if the deviation from bulk or dimensional provisions of a zoning ordinance would advance the purposes of the zoning plan and if the benefit derived from the

21

deviation would substantially outweigh any detriment." Ten Stary Dom, 216 N.J. at 30. An "applicant bears the burden to prove both the positive and negative criteria." Ibid. The approval of "a (c)(2) variance, . . . must be rooted in the purposes of the zoning ordinance rather than the advancement of the purposes of the property owner." Ibid. Therefore, "the positive criteria include proof that the characteristics of the property present an opportunity to put the property more in conformity with development plans and advance the purposes of zoning." Ibid. To establish positive criteria, applications implicate the "intent and purpose of" the MLUL under N.J.S.A. 40:55D-2. See ibid. Purposes included under the statute are:

> a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare;
>
> . . . .
>
> g. To provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens;
>
> h. To encourage the location and design of transportation routes which will promote the free flow of traffic while discouraging location of such facilities and routes which result in congestion or blight;

22

i. To promote a desirable visual environment through creative development techniques and good civic design and arrangement[.]

[N.J.S.A. 40:55D-2.]

Regarding negative criteria, the application must "include proof that the variance would not result in substantial detriment to the public good or substantially impair the purpose of the zone plan." Ten Stary Dom, 216 N.J. at 30.

"[W]e acknowledge the wide latitude accorded to a municipal planning board in the exercise of its delegated discretion." Id. at 33. Therefore, "[a] board's decisions are presumptively valid, and a court may not substitute its own judgment for that of the board unless there has been a clear abuse of discretion by the board." Ibid. Thus, "[t]he party challenging the action of a planning board carries the burden of demonstrating that the board acted arbitrarily, capriciously, or unreasonably." Ibid. "A board acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of a grant . . . of a variance are not supported by the record, or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ibid. (citation omitted).

Under N.J.S.A. 40:55D-10(g)(2), the Board is required to pass a resolution and "include findings of fact and conclusions based thereon in each decision on any application for development and shall reduce the decision to writing." "It is the [r]esolution, and not [b]oard [m]embers' deliberations, that provides the statutorily required findings of fact and conclusions." N.Y. SMSA, L.P. v. Bd. of Adjustment of Weehawken, 370 N.J. Super. 319, 334 (App. Div. 2004). "Zoning boards may choose which witnesses, including expert witnesses, to believe." Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 434 (App. Div. 2009). "However, to be binding on appeal, that choice must be reasonably made." Ibid. "In addition, the choice must be explained" and "[t]he board cannot rely upon unsubstantiated allegations." Id. at 434-35.

Applying our de novo review, we conclude plaintiffs fail to establish the Board's decision, rejecting the doctrine of res judicata to bar the 2023 Application was arbitrary, capricious, or unreasonable. In its resolution, the Board stated it "deliberated and ultimately determined" the reduced number of hotel rooms, the change in the parking plan, and the increased setback along Ocean Avenue were "substantial" and warranted treating the 2023 Application as a new application. Given our standard of review and viewing the new

application liberally, we conclude there was no error in the Board's consideration of the 2023 Application.

Moreover, we conclude plaintiffs fail to establish the Board's decision to grant the 2023 Application, was arbitrary, capricious, or unreasonable. The Board's resolution, in detail, reviews the evidence and expert testimony. The Board could choose which witnesses and experts to believe. Further, the Board engaged in the appropriate analysis under the MLUL. Given the Board's wide latitude and the presumptive validity of its decisions, we decline to substitute our judgment for the Board's.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hartley

Clerk of the Appellate Division

25                                                                    A-2199-24